USCA1 Opinion

 

 UNITED STATES COURT OF APPEALS FOR THE FIRST CIRCUIT _________________________ No. 93-1023 UNITED STATES OF AMERICA, Appellee, v. STEVEN McGILL, Defendant, Appellant. _________________________ APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE DISTRICT OF RHODE ISLAND [Hon. Raymond J. Pettine, Senior U.S. District Judge] __________________________ _________________________ Before Selya, Circuit Judge, _____________ Bownes, Senior Circuit Judge, ____________________ and Stahl, Circuit Judge. _____________ _________________________ Randy Olen, with whom David N. Cicilline was on brief, for __________ __________________ appellant. Louise A. Lerner, Attorney, Civil Rights Division, United _________________ States Dept. of Justice, with whom James P. Turner, Acting _________________ Assistant Attorney General, Jessica Dunsay Silver, Attorney, _______________________ Civil Rights Division, Edwin J. Gale, United States Attorney, and _____________ Anthony C. DiGioia, Assistant United States Attorney, were on ___________________ brief, for the United States. _________________________ November 24, 1993 _________________________ SELYA, Circuit Judge. This appeal impels us to revisit SELYA, Circuit Judge. _____________ a tragic incident that occurred nearly a decade ago. After touring familiar terrain, we affirm the district court's denial of relief under 28 U.S.C. 2255 (1988). I. BACKGROUND I. BACKGROUND Defendant-appellant Steven McGill worked as a prison guard at a state penitentiary in Cranston, Rhode Island. On July 10, 1984, at about 3:30 p.m., McGill was conversing with Roger Alessio (an inmate) in a so-called "reception area" at the prison. A second guard, Kenneth Kaplan, passed through the area en route to the kitchen and, following standard practice, handed his weaponry to McGill for safekeeping. In Kaplan's absence, McGill began to mimic elements of a scene from a motion picture, The Deerhunter (Universal Studios 1978), depicting the abuse of ______________ prisoners of war by North Vietnamese soldiers. In the course of this periculous psychodrama, McGill forced Alessio to remain seated while he, McGill, emptied the second guard's handgun of all but one bullet, spun the cylinder several times, flailed his arms wildly, and screamed, "Mau! Mau!" McGill proceeded to pull the trigger twice, first while aiming the weapon at his own head, and thereafter while aiming it at Alessio's head. On the second pull of the trigger, the gun discharged, resulting in the inmate's death. A jury convicted McGill of depriving another of his civil rights while acting under color of state law, with death resulting. See 18 U.S.C. 242 (1988). We affirmed the ___ 2 conviction on direct appeal, without prejudice, however, to appellant's right to litigate questions concerning trial counsel's effectiveness through an application for post- conviction relief. See United States v. McGill, 952 F.2d 16, 17- ___ _____________ ______ 19 (1st Cir. 1991). The district court subsequently rejected appellant's ineffective assistance claim without pausing to convene an evidentiary hearing. The instant appeal followed. II. ISSUES PRESENTED II. ISSUES PRESENTED This appeal presents two issues. We deal first with the contention that the court below erred in refusing to hold an evidentiary hearing on appellant's application for post- conviction relief. Once past that hurdle, we confront appellant's assertion that the court erred in declaring trial counsel's services acceptable notwithstanding that counsel (a) allowed The Deerhunter to be shown to the jury in its entirety, ______________ without objection, and (b) failed to produce a firearms expert as promised in the opening statement. III. THE NEED FOR AN EVIDENTIARY HEARING III. THE NEED FOR AN EVIDENTIARY HEARING Courts are busy places. Not surprisingly, then, evidentiary hearings on motions are the exception, not the rule. We have repeatedly stated that, even in the criminal context, a defendant is not entitled as of right to an evidentiary hearing on a pretrial or posttrial motion. See, e.g., United States v. ___ ____ ______________ Mala, ___ F.3d ___, ___ (1st Cir. 1993) [No. 91-2229, slip op. at ____ 8-9]; United States v. Tardiff, 969 F.2d 1283, 1286 (1st Cir. ______________ _______ 1992); United States v. DeCologero, 821 F.2d 39, 44 (1st Cir. ______________ __________ 3 1987). Thus, a party seeking an evidentiary hearing must carry a fairly heavy burden of demonstrating a need for special treatment. See United States v. Panitz, 907 F.2d 1267, 1273-74 ___ _____________ ______ (1st Cir. 1990) (collecting cases). In most situations, motions can be "heard" effectively on the papers, with the parties submitting evidentiary proffers by means of affidavits, documentary exhibits, and the like. See, ___ e.g., Aoude v. Mobil Oil Corp., 862 F.2d 890, 894 (1st Cir. ____ _____ ________________ 1988); DeCologero, 821 F.2d at 44. In borderline cases "[t]he __________ test for granting an evidentiary hearing in a criminal case should be substantive: did the defendant make a sufficient threshold showing that material facts were in doubt or in dispute?" Panitz, 907 F.2d at 1273. Applying this standard, the ______ court below, after allowing the parties to supplement the record, see Rule 7, Rules Governing Section 2255 Proceedings, determined ___ that there were "no factual issues in dispute," and, consequently, refused to schedule an evidentiary hearing. Appellant derides this ruling. He claims that, although section 2255 petitions are admittedly motions, see, ___ e.g., Rule 2, Rules Governing Section 2255 Proceedings, they are ____ special, and the movant should be afforded an evidentiary hearing as a matter of course unless the government shows that none is necessary. This thesis which implies that something about section 2255 creates a presumption in favor of evidentiary 4 hearings1 rather than the contrary presumption that attends the filing of most motions is unavailing. The language of the federal habeas statute does not require a court to reverse the usual presumption. When a petition is brought under section 2255, the petitioner bears the burden of establishing the need for an evidentiary hearing. See Mack v. United States, 635 F.2d 20, 26- ___ ____ _____________ 27 (1st Cir. 1980); United States v. DiCarlo, 575 F.2d 952, 954 ______________ _______ (1st Cir.), cert. denied, 439 U.S. 834 (1978). In determining _____ ______ whether the petitioner has carried the devoir of persuasion in this respect, the court must take many of petitioner's factual averments as true, but the court need not give weight to conclusory allegations, self-interested characterizations, discredited inventions, or opprobrious epithets. See Mack, 635 ___ ____ F.2d at 27; Otero-Rivera v. United States, 494 F.2d 900, 902 (1st ____________ _____________ Cir. 1974). Moreover, when, as in this case, a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing. See ___ DiCarlo, 575 F.2d at 954-55. _______ ____________________ 1The statute provides in pertinent part: Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall . . . grant a prompt hearing thereon . . . . 28 U.S.C. 2255. 5 We have distilled these principles into a rule that holds a hearing to be unnecessary "when a 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case." Moran v. Hogan, 494 F.2d 1220, 1222 (1st _____ _____ Cir. 1974). In other words, a " 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are `inherently incredible.'" Shraiar _______ v. United States, 736 F.2d 817, 818 (1st Cir. 1984) (citations ______________ omitted); see also Rule 4(b), Rules Governing Section 2255 ___ ____ Proceedings. Against this backdrop, it is readily apparent that the district court did not err in denying appellant's request for an evidentiary hearing. Appellant brought his petition before the very judge who presided at his trial. In doing so, he mounted no serious challenge on the facts. Rather, as we elucidate below, __ ___ _____ he sought to place a particular gloss on, and draw a particular set of conclusions from, essentially undisputed facts. That undisputed facts may plausibly be interpreted in different ways does not entitle an interested litigant to an evidentiary hearing. See, e.g., United States v. Garcia, 954 F.2d 12, 19 ___ ____ _____________ ______ (1st Cir. 1992). Under the circumstances reflected by the instant record, an evidentiary hearing would have served no useful purpose. 6 IV. THE INEFFECTIVE ASSISTANCE CLAIM IV. THE INEFFECTIVE ASSISTANCE CLAIM To succeed in setting aside a conviction premised on ineffective assistance of counsel, a petitioner must establish both constitutionally deficient performance on his attorney's part and concomitant prejudice, or, phrased another way, that the quality of legal representation at his trial was so inferior as to be objectively unreasonable, and that this incompetent lawyering redounded to his substantial detriment. See Strickland ___ __________ v. Washington, 466 U.S. 668, 689-94 (1984). __________ Here, appellant excoriates counsel for two tactical decisions that he contends were outside the realm of reasonableness. We need not reach the second stage of the Strickland inquiry in either instance, for we find appellant's __________ criticisms of these lawyerly stratagems to be unwarranted.2 ____________________ 2There is some uncertainty surrounding the standard of appellate review. Before Strickland, the rule in this circuit __________ was that fact-based findings made by a district judge on a section 2255 petition including petitions that asserted ineffective assistance claims were to be reviewed for clear error. See DiCarlo, 575 F.2d at 954-55. This rule obtained ___ _______ whether the findings were made with or without an evidentiary hearing. See id. This rule may or may not have survived ___ ___ Strickland, a habeas case under 28 U.S.C. 2254, wherein the __________ Court observed that "although district court findings are subject to the clearly erroneous standard of Federal Rule of Civil Procedure 52(a), both the performance and prejudice components of the ineffectiveness inquiry are mixed questions of fact and law." Strickland, 466 U.S. at 698. Although we have not yet considered __________ the significance of this statement vis-a-vis the standard of appellate review in section 2255 proceedings, at least one court has read the quoted statement to suggest that, with the exception of historical facts, district court findings in a section 2255 ineffective assistance case should be reviewed de novo. See __ ____ ___ United States v. Miller, 907 F.2d 994, 996-97 (10th Cir. 1990); _____________ ______ see also Fields v. Attorney General, 956 F.2d 1290, 1297 n.18 ___ ____ ______ ________________ (4th Cir. 1992) (same; 2254 proceeding). There is, of course, another possible interpretation of the Court's words, more 7 A A At trial, appellant's counsel stipulated that The ___ Deerhunter could be exhibited to the jury in its entirety. __________ Appellant says that he consistently opposed this maneuver,3 that his counsel knew of his opposition, and that no reasonably competent defense attorney would have entered into such a stipulation. We disagree. In an affidavit submitted in conjunction with an earlier motion, appellant's trial counsel explained his thinking. The prosecution wished to introduce a 15-minute excerpt from the film, bearing directly on the behavior mimicked by appellant. Based on his judgments concerning relevance, probative value, unfairly prejudicial impact, and how the judge would likely rule, counsel calculated that he would not prevail on a motion to exclude the film clip. In an effort to cut anticipated losses, ____________________ consonant with DiCarlo: that, while the district court's _______ underlying findings of fact are reviewed only for clear error, its ultimate legal conclusions may be reviewed more or less strictly according to the degree that they are fact-dominated. Cf. In re Extradition of Howard, 996 F.2d 1320, 1327-28 (1st Cir. ___ ___________________________ 1993) (elaborating standard for mixed questions of fact and law). We leave this vexing question for another day as, here, regardless of which standard of review obtains, the result is unaffected. 3While McGill has never recanted his admission that he was mimicking a scene from The Deerhunter, he has for some time _______________ vehemently denied that he was playing "Russian roulette." This seems to be the impetus for his personal opposition to the admission of the film into evidence. It is true that no money changed hands in appellant's version of the scene, and that he shot the inmate directly, rather than forcing the inmate to shoot himself. But appellant's distinction is of no legal significance, for the self-conscious patterning of his behavior after that of characters in the film suffices to make the film relevant. 8 he obtained a stipulation from the prosecution that the entire three-hour movie would be shown, in the expectation that the impact of the critical scene would be dissipated. Counsel's intuition that an objection to the film clip would have failed is supported by our current assessment of the situation. His intuition is also supported by our earlier conclusion, albeit on "plain error" review, that the movie was relevant to the jury's deliberations. See McGill, 952 F.2d at ___ ______ 18-19. Last, but far from least, this intuition derives staunch support from the opinion of the trial judge, who characterized counsel's strategic choice as objectively reasonable. We will not belabor the point. To avoid the shoals of ineffective assistance, an attorney's judgment need not necessarily be right, so long as it is reasonable. See ___ Strickland, 466 U.S. at 687-91. Here, counsel made an unarguably __________ reasonable choice. In acting on it, he extracted a fair concession for the ensuing stipulation, compelling the prosecution to show the entire film rather than zeroing in on the shorter, more powerful excerpt.4 And, finally, counsel's decision not to abide by the wishes of his client has no necessary bearing on the question of professional competence; indeed, in some instances, listening to the client rather than to ____________________ 4We note that counsel's elucidation of his strategy comports with his conduct for the duration at the trial. In his closing statement, counsel dismissed the film as boring, irrelevant, and offensive, and attempted to use the motion picture as a whole to his advantage by picking up on a piece of dialogue unrelated to the critical scene. 9 the dictates of professional judgment may itself constitute incompetence. See Bell v. Georgia, 554 F.2d 1360, 1361 (5th Cir. ___ ____ _______ 1977). B B At the trial, defense counsel elected to make an opening statement prior to presentation of the prosecution's case in chief. He told the jury that he would produce "a firearms expert" as a defense witness. He did not, however, explain what the substance of the expert's testimony would be. As matters turned out, counsel decided not to call the expert. Appellant says the breach of the attorney's forecast comprised ineffective assistance. We think not. Although a failure to produce a promised witness may under some circumstances be deemed ineffective assistance, see, ___ e.g., Anderson v. Butler, 858 F.2d 16, 19 (1st Cir. 1988), the ____ ________ ______ determination of inefficacy is necessarily fact-based. "[N]o particular set of rules can be established to define effective assistance, as hard-and-fast rules would inevitably restrict the independence and latitude counsel must have in making tactical and strategic decisions." United States v. Natanel, 938 F.2d ______________ _______ 302, 310 (1st Cir. 1991), cert. denied, 112 S. Ct. 986 (1992). _____ ______ In this case, counsel's handling of the on-again, off- again expert testimony was not only defensible, but impressive. Counsel refrained from calling the expert witness for two reasons. First, after making the opening statement, he discovered that his previously retained witness had feet of clay 10 and could easily be impeached. Second, and more important, he succeeded, by dint of skillful cross-examination of the prosecution's firearms expert, in eliciting much the same opinion evidence that he hoped to establish through his own expert. The prosecution's expert was led to concede that the trigger of the murder weapon was so sensitive that pulling it could have been an "unconscious act" a concession that defense counsel used to good effect in his summation. Knowing when to quit is often a hallmark of commendable courtroom advocacy. Thus, having proved his point through the prosecution's witness, defense counsel can scarcely be faulted for deciding to leave well enough alone. As the trial judge stated: "The decision not to call an easily impeachable witness, when the testimony sought from the witness had already been introduced from another expert, was a reasonable tactical decision." We find ourselves in full accord. V. CONCLUSION V. CONCLUSION Because the record here conclusively demonstrates that appellant is not entitled to post-conviction relief, we need go no further. We rule (1) that appellant did not have an absolute right to an evidentiary hearing, and (2) that the district court did not err in finding that the proficiency of appellant's legal representation surpassed the constitutional minimum. Affirmed. Affirmed. ________ 11