50 F.3d 1
 NOTICE: First Circuit Local Rule 36.2(b)6 states unpublished opinions may be cited only in related cases.
Gebran HANNA, Petitioner, Appellant,
v.
UNITED STATES of America, Respondent, Appellee.
 No. 94-1693.
 United States Court of Appeals,
First Circuit.
 March 27, 1995.
 
 Appeal from the United States District Court for the District of Massachusetts [Hon. Douglas P. Woodlock, U.S. District Judge ]
 Salvatore C. Adamo for appellant.
 Kevin P. McGrath, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.
 D.Mass.
 AFFIRMED.
 Before SELYA, Circuit Judge, COFFIN, Senior Circuit Judge, and STAHL, Circuit Judge.
 STAHL, Circuit Judge.
 
 
 1
 Petitioner Gebran Hanna appeals from the dismissal without hearing of his 28 U.S.C. Sec. 2255 motion to vacate, set aside, or correct his sentence. We affirm.
 
 I.
 Background
 
 2
 Pursuant to a plea agreement with the government, on February 19, 1993, just three days before his trial was scheduled to begin, petitioner pled guilty to two counts of a superseding indictment.[1] Count One charged petitioner and nine other defendants with conspiring, between March 1988 and August 1991, to import hashish from Beirut, Lebanon into Boston, Massachusetts, in violation of 21 U.S.C. Secs. 952(a) and 963. Count Two charged petitioner and three other defendants with conspiring to possess with intent to distribute, and to distribute, hashish in violation of 21 U.S.C. Secs. 841(a) and 846.
 
 
 3
 The district court departed below the minimum mandatory sentence and sentenced petitioner to eight years' imprisonment, plus five years of supervised release and a special assessment of $100.00. Petitioner did not appeal. On February 14, 1994, petitioner sought collateral relief pursuant to Sec. 2255, which the district court denied. This appeal followed.
 
 II.
 Discussion
 
 4
 Section 2255 provides that federal prisoners may file a motion in the "court which imposed the sentence to vacate, set aside or correct the sentence." To receive relief, a petitioner must establish a jurisdictional or constitutional error, "a fundamental defect which inherently results in a complete miscarriage of justice," or "an omission inconsistent with the rudimentary demands of fair procedure." Hill v. United States, 368 U.S. 424, 428 (1962).
 
 A. Failure to Hold a Hearing
 
 5
 Petitioner first argues that the district court abused its discretion by failing to hold an evidentiary hearing to consider his Sec. 2255 motion. In making this argument, petitioner primarily relies on the language of Sec. 2255, which provides, in pertinent part:
 
 
 6
 Unless the motion and the files and records of the case conclusively show that the prisoner is entitled to no relief, the court shall cause notice thereof to be served upon the United States attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto.
 
 
 7
 28 U.S.C. Sec. 2255 (emphasis added).
 
 
 8
 We have previously held that Sec. 2255 does not create a special presumption in favor of an evidentiary hearing. United States v. McGill, 11 F.3d 223, 225 (1st Cir. 1993). A hearing is not necessary " 'when a Sec. 2255 motion (1) is inadequate on its face, or (2) although facially adequate is conclusively refuted as to the alleged facts by the files and records of the case.' " Id. at 225- 26 (quoting Moran v. Hogan, 494 F.2d 1220, 1222 (1st Cir. 1974)). "In other words, a Sec. 2255 motion may be denied without a hearing as to those allegations which, if accepted as true, entitle the movant to no relief, or which need not be accepted as true because they state conclusions instead of facts, contradict the record, or are inherently incredible." McGill, 11 F.3d at 226 (quotation and citation omitted).
 
 
 9
 When a petition is brought under Sec. 2255, "the petitioner bears the burden of establishing the need for an evidentiary hearing." Id. at 225. This burden is more difficult when the petition is presented to the trial judge, for in such circumstances "the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." Id.
 
 
 10
 Judge Woodlock presided over petitioner's case from the beginning, including his Sec. 2255 motion. Because we agree, as explained below, that none of petitioner's stated grounds entitle him to relief, we hold that there was no abuse of discretion in not holding an evidentiary hearing.
 
 
 11
 B. Guilty Plea: Knowing and Voluntary?
 
 
 12
 Petitioner argues that during the change-of-plea hearing, the district court failed to explain the consequences of a guilty plea, specifically its permanence, its maximum possible penalty, whether it carried a fine, and its supervised release term. Petitioner argues that such failure violated Fed. R. Crim. P. 11(c),[2] and that because of such failure, his guilty plea was "unknowing." The government concedes that the district court "did not explicitly state the maximum penalties that [petitioner] faced at the change-of-plea hearing," but argues that petitioner's plea was still knowing and voluntary.
 
 
 13
 Fed. R. Crim. P. 11(h) expressly provides: "Any variance from the procedures required by this rule which does not affect substantial rights shall be disregarded." Thus, a violation of Rule 11 will not necessarily entitle petitioner to relief. See United States v. Timmreck, 441 U.S. 780, 785 (1979) ("collateral relief is not available when all that is shown is a failure to comply with the formal requirements of [Rule 11]").
 
 
 14
 In denying petitioner's Sec. 2255 motion, the district court held:
 
 
 15
 Contrary to petitioner's assertions, the record substantiates that before he tendered his plea of guilty, the petitioner was made aware of potential maximum penalties. The Rule 11 plea colloquy incorporated by explicit reference the written plea agreement which recited those penalties. Petitioner was reminded of the maximums in the Presentence Report. The belated assertion of this claim, well after petitioner was aware of the maximum penalties, demonstrates that a further express recitation by the court itself of the potential maximum penalty was not material to his plea decision.
 
 
 16
 We find no error in this holding.
 
 
 17
 Petitioner argues that his limited English skills and his inability to read or write made it imperative that the district court recite the maximum penalties during the Rule 11 plea colloquy. The record clearly indicates, however, that petitioner was informed of the maximum penalties at several points prior to the change-of-plea hearing, including just before the hearing, when the plea agreement was read to him in Arabic by the court interpretor. In light of this, the district court did not clearly err in finding that, even though it had neglected to inform petitioner of the maximum penalties during the change-of-plea hearing, petitioner nevertheless understood those penalties when he pled guilty.
 
 C. Factual Basis for Plea
 
 18
 Petitioner also argues that the district court erred in finding that there was a sufficient factual basis for his plea. First, petitioner argues that he had not agreed to participate in the conspiracy before the government rendered it impossible by seizing the hashish. Second, petitioner argues that, at most, the government's proof showed an agreement to import hashish into Canada in violation of no United States law.
 
 
 19
 Petitioner bases his arguments on the following statement made by the prosecutor at the change-of-plea hearing:
 
 
 20
 On August 30th, 1991, Mr. Hanna returned from Montreal to Boston for the purpose of continuing discussions with [co-defendant Peter] Kattar about the Canadian's position on the sale of this hashish and it was at that time that he was arrested at the airport.
 
 
 21
 Based on this statement, petitioner argues that the August 26, 1991 indictment was returned "before Mr. Hanna, a Canadian citizen, had made an agreement with Peter Kattar for drugs already seized by the government."
 
 
 22
 We hold that the district court did not clearly err in finding that there was a sufficient factual basis for petitioner's plea. Before making the above-quoted statement, the prosecutor recited several facts to the effect that petitioner had begun to participate in the conspiracy as early as 1990, when he gave "advice and assistance" to Kattar in an effort to import 5,000 kilograms of hashish from Lebanon into the United States. The prosecutor cited more facts that showed that petitioner's involvement in the conspiracy continued into 1991, with petitioner working closely with Kattar to free Kattar's load of hashish from Lebanon. The prosecutor also highlighted a period of a few weeks during August 1991, when petitioner engaged in extensive negotiations with Kattar and others in an effort to purchase Kattar's hashish shipment.[3] During that time period, petitioner travelled from Lebanon to the United States, and then between Boston, Montreal, and Ottawa, all in furtherance of these negotiations.
 
 
 23
 After hearing these facts, the district court asked petitioner, "Mr. Hanna, you have heard what [the prosecutor] says is the Government's evidence in this case. Do you disagree with any of that?" Petitioner responded by making one clarification, about which the district court questioned the prosecutor.[4] The district court then asked petitioner, "Mr. Hanna, do you disagree with anything that [the prosecutor] has to say?" Petitioner responded, "No." The district court then asked, "That's the way it happened?" Petitioner responded, "Yes."
 
 
 24
 We hold that these facts, and petitioner's admissions, established a sufficient factual basis for petitioner's guilty plea. We further hold that, to the extent petitioner makes a jurisdictional argument, the conspiracies charged were plainly within the jurisdiction of the United States.
 
 D. Ineffective Assistance of Counsel
 
 25
 Petitioner also argues that he did not receive effective assistance of counsel. Petitioner focuses on two different attorneys: Brown, who was appointed to represent him soon after he was indicted and who was to defend him at trial, and McBride, whom petitioner retained for the change-of-plea hearing. We find petitioner's arguments waived.
 
 
 26
 Petitioner argues on appeal that he only pled guilty because he was unwilling to go to trial represented by Brown, with whom he was dissatisfied.[5] Petitioner did not, however, indicate that that was the reason for his guilty plea at the change-of-plea hearing. Rather, petitioner indicated that his plea was voluntary.[6] Accordingly, petitioner waived consideration of the effectiveness of Brown's prior representation.
 
 
 27
 At oral argument, petitioner argued that McBride did not provide effective assistance because he did not inform the district court at sentencing that petitioner had substantially assisted the government by persuading a federal prisoner to cooperate. Petitioner did not, however, provide factual information about this assistance during oral argument, nor did he develop this argument in his brief. In fact, petitioner's brief fails to identify any aspect of McBride's representation that fell below the standard of effective representation. Accordingly, we deem the effectiveness of McBride's representation waived. See Alan Corp. v. International Surplus Lines Ins. Co., 22 F.3d 339, 343-44 (1st Cir. 1994) (arguments presented in a perfunctory manner, without developed argumentation, may be deemed waived).
 
 III.
 Conclusion
 
 28
 Because none of petitioner's arguments are meritorious,[7] the decision of the district court to deny petitioner's motion for collateral relief pursuant to Sec. 2255 is
 
 
 29
 Affirmed.
 
 
 
 [1]
 On August 26, 1991, petitioner and others were charged in a two-count indictment with one count of conspiracy to import hashish and one count of conspiracy to possess hashish with the intent to distribute it. On January 31, 1992, a six-count superseding indictment was filed, charging petitioner with the same two conspiracy counts plus two additional, related substantive counts. Eleven other defendants were charged in various counts of the superseding indictment
 
 
 [2]
 Fed. R. Crim. P. 11(c) provides:
 "Advice to Defendant. Before accepting a plea of guilty or nolo contendere, the court must address the defendant personally in open court and inform the defendant of, and determine that the defendant understands, the following:
 "(1) the nature of the charge to which the plea is offered, the mandatory minimum penalty provided by law, if any, and the maximum possible penalty provided by law, including the effect of any special parole or supervised release term, the fact that the court is required to consider any applicable sentencing guidelines but may depart from those guidelines under some circumstances, and, when applicable, that the court may also order the defendant to make restitution to any victim of the offense; and
 "(2) if the defendant is not represented by an attorney, that the defendant has the right to be represented by an attorney at every stage of the proceeding and, if necessary, one will be appointed to represent the defendant; and
 "(3) that the defendant has the right to plead not guilty or to persist in that plea if it has already been made, the right to be tried by a jury and at that trial the right to the assistance of counsel, the right to confront and cross- examine adverse witnesses, and the right against compelled self-incrimination; and
 "(4) that if a plea of guilty or nolo contendere is accepted by the court there will not be a further trial of any kind, so that by pleading guilty or nolo contendere the defendant waives the right to a trial; and
 "(5) if the court intends to question the defendant under oath, on the record, and in the presence of counsel about the offense to which the defendant has pleaded, that the defendant's answers may later be used against the defendant in a prosecution for perjury or false statement."
 
 
 [3]
 The Presentence Report indicates that at the same time he was working to free Kattar's load of hashish from Lebanon, petitioner was also involved in an independent hashish conspiracy for which petitioner had accepted $350,000 from investors for ten tons of hashish. Petitioner, however, was unable to deliver that hashish to his investors, so he turned to Kattar for assistance and arranged to swap loads with him; under this arrangement, the details of which were still being worked out at the time of his arrest, petitioner was to deliver the hashish Kattar was bringing into the United States to his Canadian investors and Kattar was to receive petitioner's hashish when it arrived
 
 
 [4]
 Petitioner stated, "The load came to Italy, not to the United States-to Italy-to Italy, not to the United States. Who brought the load to the United States?" The prosecutor responded to the district court's questioning that the hashish had gone to Italy after it left Lebanon, but that it was then brought to the United States, where the United States Customs Service seized it
 
 
 [5]
 Prior to changing his plea, petitioner filed a motion for withdrawal of Brown as counsel. Both the magistrate and the district court, after hearings, found Brown entirely satisfactory and denied petitioner's motion. On appeal, petitioner argues that Brown misinformed the magistrate and the district court about the extent of his representation. We do not consider these allegations, however, because the proper time to challenge the district court's refusal to grant petitioner's motion would have been before petitioner changed his plea. We note, however, that even if Brown's alleged misrepresentations had been brought to the district court's attention at the appropriate time, they probably would not have changed the district court's ruling as to Brown's effectiveness
 Petitioner also contends that he was denied counsel altogether at an important stage in the proceedings because the district court did not appoint an attorney to help him make his motion for withdrawal of Brown as counsel. Petitioner did not, however, ever ask either the magistrate or the district court to appoint counsel (other than Brown) to help him make this motion. While we doubt that we would hold a refusal to appoint alternative counsel for these hearings an abuse of discretion, we will not do so when petitioner made no request for alternative counsel.
 
 
 [6]
 Prior to accepting petitioner's plea, the district court asked petitioner's counsel, "Mr. McBride, do you know of any reason why I shouldn't accept a plea?" McBride responded, "No, Your Honor. I have had ample opportunity to speak with him. I'm satisfied that the decision he's making today is voluntary, intelligent, and knowing. And I have urged him to do that because I consider it to be in his best interest based upon the overwhelming evidence that the Government has."
 
 
 [7]
 Petitioner also argues that the government denied him due process by failing to advise the district court at his change- of-plea hearing that his guilty plea was made pursuant to an all-or-nothing plea offer by the government, i.e., a plea offer that was contingent upon the guilty pleas of all of his co- defendants. While it is not entirely clear from the record, it is apparent that petitioner did not accept the government's all-or-nothing plea offer, but instead pled pursuant to a different plea offer