Ambrose L. DEVANEY, Plaintiff,

v.

UNITED STATES of America,
Defendant.

No. Civ.A. 97–10957–WGY.

United States District Court,
D. Massachusetts.

April 16, 1999.

Owen S. Walker, Office of the Federal Defender, Boston, MA, for Ambrose L. Devaney, petitioner.

Victor A. Wild, United States Attorney's Office, Boston, MA, for USA, respondent.

## MEMORANDUM AND ORDER

WILLIAM G. YOUNG, Chief Judge.

### I. *Introduction.*

Pursuant to 28 U.S.C. § 2255, Ambrose L. Devaney ("Devaney") seeks to have his sentence vacated and set aside on the grounds that (i) the government failed to disclose exculpatory evidence in a manner that violated his constitutional right to a fair trial, and (ii) he received constitutionally ineffective assistance of counsel at trial due to his lawyer's conflict of interest and inadequate preparation and performance.[1]

### II. *Factual Background.*

Following a seven-week jury trial, Devaney was convicted of: i) conspiracy to commit bank fraud in violation of 18 U.S.C. 371 and § 1344 (Count 1); ii) three counts of bank fraud in violation of 18 U.S.C. § 1344 (Counts 5–7); and ii) one count of unlawful monetary transactions (money laundering) in violation of 18 U.S.C. § 1957 (Count 19). For a factual review of the underlying criminal conviction, see *United States v. Mangone*, 105 F.3d 29 (1st Cir. 1997), *United States v. Smith*, 46 F.3d 1223 (1st Cir.1995), and *Cohen v. United States*, 996 F.Supp. 110 (D.Mass.1998).

On February 15, 1994, Devaney was sentenced to concurrent terms of thirty-seven months imprisonment, a thirty-six month term of supervised release, restitution in an amount up to ten million dollars, and a special assessment of two hundred and fifty dollars. Devaney's prison term ended on December 17, 1996. He is now serving the supervised release term.[2]

### III. *Discussion.*

#### A. *Failure to Disclose Exculpatory Evidence.*

In his section 2255 petition, Devaney asserts that at trial the government withheld evidence obtained from Theresa McIntyre ("McIntrye"), the secretary of his co-defendant James K. Smith ("Smith"), indicating that she and Smith fabricated documents in a massive bank fraud scheme and that, as far as McIntyre knew, Devaney did not fabricate documents or know of any document fabrication. Devaney also avers that "the defendant also expects, and therefore alleges, that the government knew from McIntyre that Smith told her not to let Devaney know about the document fabrication." Devaney Mot. at 8.

Thus, Devaney asserts that the government failed to disclose evidence that McIntyre and Smith fabricated documents which contained Devaney's forged signatures. The trial evidence, however, tended to show Devaney as being directly involved

---

1. On April 5, 1997, this Court denied sua sponte Devaney's motion to vacate and set aside the sentence based on this Court's denial of his request for a hearing on the alleged attorney-client conflict and subsequent request for new counsel. *See* Rule 4(b) of the Rules Governing Section 2255 Proceedings. This Court also denied in part Devaney's motion based on his claim of ineffective assistance of counsel; specifically, this Court rejected Devaney's argument that counsel failed to inform the Court of certain matters at a May 13, 1993 pretrial status conference. The Court then ordered that Devaney's remaining claims—that the government withheld exculpatory evidence and that he received ineffective assistance of counsel due to his lawyer's conflict of interest and defective preparation and performance—be served on the government for its response. This Order addresses those claims.

2. Devaney's conviction was affirmed on appeal. *See Smith*, 46 F.3d at 1240.

in the production of other fraudulent documents,[3] and these documents played a pivotal role in the fraudulent scheme. Devaney owned a one-third interest, along with Smith and Richard Mangone ("Mangone"), in eleven of the trusts that had received "participation" loans. He owned almost a one-third interest in some of the trusts that were involved in sham rollover sales. In all, Devaney received nearly one million dollars in excess proceeds from the fraudulent loans. His role in the conspiracy was that of the "front"—the straw man. As the Court of Appeals characterized Devaney's conduct:

> [H]e (1) identified the target properties and negotiated for their purchase by Mangone, Smith, and himself; (2) falsely represented that he and his wife were the sole owners of trusts that were jointly owned by Smith and Mangone; (3) signed purchase and sale agreements with inflated purchase prices that were submitted to [a federal credit union]; (4) recruited putative borrowers, and signed indemnification agreements assuring them that they would not be liable for loans; (5) concealed from Digital's loan officer the fact that Mangone, president of Digital, was a beneficiary of one of the trusts; and (6) signed a purchase and sale agreement as to the purported buyer in a rollover sale from one trust to another.

*Smith*, 46 F.3d at 1235. Now, for the first time, Devaney contends that certain of the inculpatory documents containing what appeared to be his signature, are, in fact, forgeries known to be such by the government.

■ Even putting aside the obvious—that Devaney could well have raised this issue at trial or upon direct appeal (after all, one expects that he knew his own signature)—here Devaney has alleged a mere expectancy that he could prove that

the government was told by McIntyre that Smith told her not to let Devaney know about the document fabrication. *See* Devaney Mot. at 8. Devaney simply states his allegations without any substantive legal or factual argumentation and has filed no memoranda to support his claim. *See United States v. Zannino*, 895 F.2d 1, 17 (1st Cir.1990) (noting appellate rule that "issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived.").

Significantly, Devaney offers no explanation for his failure to raise this evidentiary issue during trial in this Court or on direct appeal. A non-constitutional claim that could have been asserted before, but was not, may not now be asserted by way of collateral attack under section 2255 absent "exceptional circumstances." *Knight v. United States*, 37 F.3d 769, 772 (1st Cir. 1994) (noting that the Supreme Court has repeatedly emphasized that section 2255 is not a substitute for direct appeal). There are no such circumstances here. "[T]o obtain collateral relief based on trial errors to which no contemporaneous objection was made, convicted defendant must show both (1) 'cause' excusing his double procedural default, and (2) 'actual prejudice' resulting from the errors of which he complains." *United States v. Frady*, 456 U.S. 152, 167–68, 102 S.Ct. 1584, 71 L.Ed.2d 816 (1982). Because neither of those conditions has been satisfied by Devaney, his argument that the government improperly withheld exculpatory evidence must fail.

### B. *Ineffective Assistance of Counsel.*

Devaney asserts three grounds upon which he believes a finding of ineffective assistance of counsel may be made: (i) an inexcusable conflict-of-interest undermined Devaney's representation because his

---

**3.** *See, e.g.,* Trial Ex.2000 BAC (fraudulent Highview Purchase & Sale Agreement, executed by Devaney); Ex. 5100B (fraudulent Perch Pond Certificate of Beneficial Interests, executed by Devaney); Ex.2001B (fraudulent Highview Certificate of Beneficial Interests, executed by Devaney); Ex. 6200 (fraudulent Direction of Beneficiaries, executed by Devaney); Ex. 6203 (fraudulent Schedule of Beneficiaries, executed by Devaney).

brother-in-law, Frank Slattery ("Slattery"), paid his trial counsel's fees; (ii) counsel failed adequately to prepare and perform at trial by neglecting to investigate whether certain items of evidence were forged and by failing to contact a number of potential witnesses; and (iii) counsel failed adequately to advise Devaney of the possibility and ramifications of moving for a mistrial.

The standard applied to claims of ineffective assistance of counsel is clear:

> The benchmark ... is whether counsel's conduct so undermined the proper functioning of the adversarial process that the trial cannot be relied on as having produced a just result. In order to obtain a reversal on this ground, a criminal defendant must show both that counsel fell short of the applicable performance standard and that prejudice resulted.

*United States v. Natanel*, 938 F.2d 302, 309 (1st Cir.1991) (quoting *Strickland v. Washington*, 466 U.S. 668, 686, 104 S.Ct. 2052, 80 L.Ed.2d 674 [1984] ) (internal quotation marks omitted). Counsel is "strongly presumed" to have provided adequate assistance and made relevant determinations with reasonable professional care. *Lopez–Nieves v. United States*, 917 F.2d 645, 648–49 (1st Cir.1990) (quoting *Strickland*, 466 at 690, 104 S.Ct. 2052). Thus, in order to make out a showing of constitutionally ineffective assistance of counsel, Devaney must show both that "counsel's performance fell below an objective standard of reasonableness," *Knight*, 37 F.3d at 774, and "that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different," *id.* (citing *Strickland*, 466 U.S. at 687, 104 S.Ct. 2052).

### 1. Conflict of Interest

Devaney's first argument for ineffective assistance of counsel is that his trial counsel suffered a conflict of interest because Slattery paid their fees. Where a defendant shows an actual or real conflict of interest, *see United States v. Fahey*, 769 F.2d 829, 835 (1st Cir.1985), he or she benefits from a "limited presumption of prejudice," *Strickland*, 466 U.S. at 692, 104 S.Ct. 2052. This "[p]rejudice is presumed only if the defendant demonstrates that counsel 'actively represented conflicting interests' and that 'an actual conflict of interest adversely affected his lawyer's performance.' " *Id.* (quoting *Cuyler v. Sullivan*, 446 U.S. 335, 350, 100 S.Ct. 1708 [1980] ). More specifically, Devaney must show that: "(1) the lawyer could have pursued a plausible alternative defense strategy or tactic and (2) the alternative strategy or tactic was inherently in conflict with or not undertaken due to the attorney's other interests or loyalties." *United States v. Soldevila–Lopez*, 17 F.3d 480, 486 (1st Cir. 1994).

Devaney's petition argues that the conflict of interest was "actual" in that trial counsel felt beholden to Slattery, whose interest was in minimizing fees rather than pursuing a vigilant defense. Devaney charges that, pursuant to this directive, his trial counsel improperly pursued a plea bargain rather than a full defense on the merits. There are, however, at least three legal failings in this argument. First, pursuing alternative defense strategies such as a plea arrangement is highly appropriate professional conduct. *See Strickland*, 466 U.S. at 681, 104 S.Ct. 2052 (counsel has obligation to investigate alternative strategies); *United States v. McGill*, 11 F.3d 223, 227 (1st Cir.1993) (noting that "in some instances, listening to the client rather than to the dictates of professional judgment may itself constitute incompetence."). Second, it is not apparent that the mere fact of Slattery paying counsel's fees should count as an actual conflict. The professional obligations of counsel are not breached by allowing a third party to pay fees. *See* Model Rule Prof. Conduct 1.8(f). Absent stronger evidence than simply the fact of fee payment, Devaney's claim of conflict is an "attenuated hypothesis having little consequence to the adequacy of represen-

tation." *Fahey,* 769 F.2d at 835.[4] Third, Devaney has made no showing that the conflict, even if actual, adversely affected trial counsel's performance. This Court has previously noted that Devaney's attorneys were well prepared for trial.[5] Their actual performance at trial only confirmed this fact. In addition to obtaining pre-trial dismissal as to Devaney on ten counts charging violations of 18 U.S.C. § 1006, trial counsel helped to obtain acquittals on six counts at trial. Devaney's ultimate sentence of three years and one month was considerably less than the twenty-four, fifteen, and ten year sentences received by his co-defendants. Indeed, at sentencing, Devaney faced a guidelines range of seventy to eighty-seven months in prison, making his ultimate sentence of thirty-seven months a generous departure from the low end of the guidelines range. For these reasons, the Court refuses to accept that a conflict of interest impermissibly affected trial counsel's performance.

### 2. *Inadequate Preparation and Performance*

■ Devaney also alleges that his assistance by counsel was constitutionally defective in that his trial attorneys failed to call possible defense witnesses, and failed to retain a handwriting expert to investigate the authenticity of a certain trial exhibit. As to the possibility of calling other defense witnesses, Devaney offers no explanation of what their testimony would have been or how it would have impacted the outcome of the case. As such, the Court cannot find "that there is a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different." *Knight,* 37 F.3d at 774. As for the possibility of retaining a handwriting expert, Devaney only alleges that Ex.2001BAE, a Certificate of Benefi-

cial Interests relating to Highview Realty Trust, contained a forged signature. Even accepting this allegation as true, Devaney does not challenge the remaining documents found to contain his signature which implicated him in the fraudulent activities. *See supra* note 3. Nor does Devaney show how the verdict against him would have been altered by the possibility of a single document being found to contain a signature by his co-defendant's secretary, rather than him. "[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct." *Murchu v. United States,* 926 F.2d 50, 58 (1st Cir.1991) (quoting *Strickland,* 466 U.S. at 690, 104 S.Ct. 2052). The decision by Devaney's trial counsel not to pursue the possibility of a forged document appears to have been based on sound, practical reasoning and full discussion with Devaney. *See* U.S. Opp., Ex. A. at ¶ 6. This Court finds both that trial counsel's decision at the time and under the circumstances was reasonable, and that any potential exclusion of the challenged document would not have had a reasonable probability of altering the outcome of the trial.

### 3. *Inadequate Advice Regarding Waiver of Mistrial*

■ Devaney finally alleges that trial counsel provided ineffective assistance by failing to adequately advise him regarding his waiver of mistrial. The facts before the Court, however, demonstrate that Devaney was well informed of the advantages and disadvantages of pursuing a second trial without co-defendants present. *See id.* at Ex. B. at ¶¶ 5–7 (recounting trial counsel's extensive discussions with Devaney regarding the strategic implications of

---

**4.** Moreover, even if it is true that Slattery directed trial counsel "under no circumstances to go to trial," Devaney Mot. at 5, the obvious facts reveal that counsel defied Slattery's instructions and conducted a lengthy trial on Devaney's behalf.

**5.** The Court may rely upon knowledge gained during previous proceedings and upon facts with which it is familiar. *See McGill,* 11 F.3d at 225.

moving for a mistrial); Trial Tr. V. 28 at 3–4 (counsel representing, after discussion and with Devaney present, that "Mr. Devaney prefers to go forward this morning"). Moreover, Devaney has not shown how trial counsel's advice to waive mistrial was anything other than a strategic decision, well within the permissible sphere of activity under *Strickland* standards. *See United States v. Rodriguez Rodriguez*, 929 F.2d 747, 753 (1st Cir.1991) ("[T]he mere allegation that counsel wrongly recommended to go to trial was properly dismissed."). Finally, even upon a showing, absent here, that counsel's advice was wrongful, Devaney has not demonstrated that he would have acted differently if not under counsel's influence. *See Hill v. Lockhart*, 474 U.S. 52, 58–59, 106 S.Ct. 366, 88 L.Ed.2d 203 (1985).

## IV. *Conclusion.*

For the foregoing reasons, Devaney's Section 2255 Petition is **DENIED** without hearing.[6]

---

**6.** The First Circuit has held that Section 2255 motions may be denied without a hearing. "In most situations [section 2255] motions can be 'heard' effectively on the papers...." *McGill*, 11 F.3d at 225. Furthermore, as in this case, when "a petition for federal habeas relief is presented to the judge who presided at the petitioner's trial, the judge is at liberty to employ the knowledge gleaned during previous proceedings and make findings based thereon without convening an additional hearing." *Id.* (citing *United States v. DiCarlo*, 575 F.2d 952, 954–955 [1st Cir.1978] ).