# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

# DIVISION  II

| | |
|---|---|
| STATE OF WASHINGTON,<br><br>　　　　　Respondent,<br><br>　　v.<br><br>ALISHA KAY CRUSCH,<br><br>　　　　　Appellant. | No.  57500-1-II<br><br><br>UNPUBLISHED OPINION |

PRICE, J. — Alisha Crusch appeals her convictions for residential burglary and theft of a motor vehicle.  Crusch argues she received ineffective assistance of counsel when her defense counsel (1) failed to specify a basis for a hearsay objection and (2) promised evidence during opening statement that was never introduced at trial.  We disagree and affirm.

## FACTS

### I.  BACKGROUND FACTS

Crusch and two other persons entered J. Gutierrez's home when Gutierrez was away and took several high-end purses.  Crusch also stole Gutierrez's car.  Using surveillance footage, Gutierrez identified Crusch as one of the persons who broke into her home.  When law enforcement officers from the sheriff's office, including Deputy Chad Thompson, went to Crusch's home to speak to her, they observed two of Gutierrez's purses.  Crusch was placed under arrest.  At this time, law enforcement also located Gutierrez's car parked near Crusch's home.

Crusch told the officers that she had permission to take the purses.  She also told them she had recently purchased the car and showed them sale documents for the car that included her name.  After further investigation, the officers believed the documents were forged.

Crusch was charged with residential burglary, theft of a motor vehicle, and forgery.  The case proceeded to a jury trial.

II.  JURY TRIAL

A.  PRETRIAL MATTERS

Prior to trial, the trial court suppressed the statements Crusch made to law enforcement about how she bought Gutierrez's car.  As a result of the statements' suppression, the trial court also suppressed the car sale documents Crusch provided law enforcement.[1]

At this pretrial hearing, Crusch indicated she would call two witnesses in her defense, A. Ross and A. Messersmith.  Defense counsel asserted that Messersmith allegedly invited Crusch to enter the home when Gutierrez was away and anticipated that both witnesses would testify about a housesitting arrangement.  Ross would also testify to witnessing the sale of the car to Crusch.

B.  OPENING STATEMENTS

During Crusch's opening statement, defense counsel stated the evidence would show that Gutierrez allowed someone to stay at her home and that Crusch believed she had permission to take the purses.  Defense counsel stated,

> The facts will show that [] Gutierrez, the alleged victim in this matter, was out of town.  While out of town, she allowed someone to watch her place.  That person

---

[1] The State anticipated presenting the car sale documents as evidence for the forgery charge.  With the suppression of the documents, the State was unable to present the evidence of the alleged forgery to the jury.

informed my client that there were some purses that Ms. Gutierrez was giving away and you can come by and pick them up. She picks them up. It's on video.

. . . .

Ms. [Crusch] is later contacted by law enforcement in regards to those purses. She indicates that, yeah, I have them. I was given permission to take them. I didn't realize. Here they are. Gave them to the officer.

Verbatim Rep. of Proc. (VRP) at 242-43. Defense counsel did not identify who would testify to these facts.

### C. TRIAL TESTIMONY

Gutierrez testified at trial. She said she had two security cameras set up at her home, which alerted her if either camera picked up any movement or activity. While she was away, she received an alert that there was movement in her home and three persons were recorded entering her home and leaving with several purses. Video footage also depicted a woman getting into a car Gutierrez identified as her car. Gutierrez identified Crusch as being captured on the video entering her home and getting into her car. She testified she had not given anybody permission to enter her home or take her car.

On cross-examination, Gutierrez testified she did not know Messersmith, but did know Ross. Defense counsel further questioned Gutierrez about the housesitting arrangement:

Q: Ms. Gutierrez, isn't it true that when you left town you gave [Messersmith] permission to housesit?
A: No. I do not know who [Messersmith] is.
Q: Did you give anyone permission to housesit?
A: No.

VRP at 289-90.

Deputy Thompson also testified. He responded to Gutierrez's complaint about her home being broken into and watched the surveillance footage provided by Gutierrez. He said Gutierrez

identified Crusch from the footage and provided him with her location. After arriving at Crusch's

home, the deputy observed two of Gutierrez's purses and placed Crusch into custody.

The deputy also testified he "noticed an Escalade parked in front of the [Crusch] residence

and recognized [it] as Ms. Gutierrez's." VRP at 299. He then ran a Department of Licensing

(DOL) check on the car. The following exchange then took place:

> Q: What did DOL have it as registered --
> [Defense Counsel]: Objection.
> The Court: I'll permit this.
> A: I believe it was registered to a man named Larry, but came back as sold to Ms. Gutierrez.

VRP at 300.

On cross examination, defense counsel asked Deputy Thompson whether he checked the

car's license plate or vehicle identification number (VIN):

> Q: So in order to identify a vehicle, you would look at a plate; correct?
> A: Or the VIN number.
> Q: Or a VIN number. Did you do that?
> A: We verified it was Ms. Gutierrez's vehicle, yes.

VRP at 307.

Prior to resting, the State again sought to admit the car sale documents into evidence.

Crusch objected because the defense had assumed the documents were excluded and, if they were

admitted at that stage of the trial, the defense would be prejudiced. Defense counsel then stated,

"[I]t was defense's intention to rest as soon as the state rested, not call any witnesses. None. Not

[Ross], not [Messersmith], not my client. Rest now, after some motions, but we were prepared to

4

rest. I've had these discussions with my client." VRP at 326-27. The car sale documents remained excluded.

After the State rested, Crusch moved to dismiss the theft of a motor vehicle and forgery charges. The trial court dismissed only the forgery charge. The defense then rested, having called no witnesses.

The jury found Crusch guilty of residential burglary and theft of a motor vehicle. Crusch appeals.

ANALYSIS

I. LEGAL PRINCIPLES

We review ineffective assistance of counsel claims de novo. *State v. Vazquez*, 198 Wn.2d 239, 249, 494 P.3d 424 (2021). To show ineffective assistance of counsel, the defendant must demonstrate both that their attorney's performance was deficient and that the deficient performance prejudiced them. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984) (known as the two-prong *Strickland* test); *In re Pers. Restraint of Yates*, 177 Wn.2d 1, 35, 296 P.3d 872 (2013). Failure to establish either prong is fatal to the claim. *Strickland*, 466 U.S. at 700.

Counsel's performance is deficient under the first *Strickland* prong if it falls below an objective standard of reasonableness. *State v. Grier*, 171 Wn.2d 17, 33, 246 P.3d 1260 (2011), *cert. denied*, 574 U.S. 860 (2014). Generally, to show that trial counsel was deficient, "the defendant must show in the record the absence of legitimate strategic or tactical reasons supporting the challenged conduct by counsel." *State v. McFarland*, 127 Wn.2d 322, 336, 899 P.2d 1251 (1995). "The decision of when or whether to object is a classic example of trial tactics." *State v.*

*Madison*, 53 Wn. App. 754, 763, 770 P.2d 662, *review denied*, 113 Wn.2d 1002 (1989).  We

presume counsel's performance was reasonable.  *Grier*, 171 Wn.2d at 33.

To show prejudice for the second prong, the defendant must demonstrate a reasonable

probability that the outcome of the proceeding would have been different if counsel had not

performed deficiently.  *State v. Johnson*, 12 Wn. App. 2d 201, 210, 460 P.3d 1091 (2020), *aff'd*,

197 Wn.2d 740, 487 P.3d 893 (2021).

II. APPLICATION

A. THE OBJECTION REGARDING THE DOL RESULTS

Crusch contends defense counsel was ineffective because they failed to specify a basis for

the objection about the DOL results during Deputy Thompson's testimony.  We disagree.

Crusch argues defense counsel was ineffective because counsel should have identified

hearsay as the specific basis for the objection to the deputy's testimony about the DOL results.

But under ER 103(a), counsel is not required to state the basis for the objection if the basis is

readily apparent.  Here, the potential basis of hearsay would have been apparent to the trial court;

indeed, neither party has identified any other plausible bases for an objection.  Nor did the trial

court appear to be unsure of the objection's basis, as it overruled the objection without more.[2]

Accordingly, Crusch has not shown that her counsel's failure to specify the precise objection was

deficient under the first prong of the *Strickland* test.

---

[2] In her reply brief, Crusch appears to argue that her assignment of error for ineffective assistance of counsel can be converted to an evidentiary one—that is, the trial court erred by admitting the evidence because the DOL information *was* hearsay and no hearsay exceptions would apply.  We, however, will not address issues raised only in reply briefs.  RAP 10.3(c); *State v. Wilson*, 162 Wn. App. 409, 417 n.5, 253 P.3d 1143, *review denied*, 173 Wn.2d 1006 (2011).

But even assuming counsel was deficient for failing to announce a more precise objection, Crusch cannot meet the second *Strickland* prong assuming the exclusion of the evidence. There was other unrefuted evidence the car belonged to Gutierrez. Video footage showed Crusch getting into the car Gutierrez identified as hers, and Gutierrez testified she did not give anyone, including Crusch, permission to take her car. Deputy Thompson further testified he recognized the car outside of Crusch's home as Gutierrez's and later verified it was her car.[3] Even without the DOL evidence, there is no reasonable probability that the outcome of the trial would have been different. Therefore, because Crusch cannot show prejudice, her claim fails.

B. DEFENSE COUNSEL REASONABLY SHIFTED STRATEGY MID TRIAL

Crusch also argues she received ineffective assistance of counsel because defense counsel promised evidence in opening statement that was not introduced at trial. Specifically, she argues defense counsel was deficient by promising evidence to the jury that Gutierrez provided permission to enter the home and take the purses, but then failing to deliver. We disagree.

With the dynamics of a trial, strategies can change after opening statement. *See Ouber v. Guarino*, 293 F.3d 19, 29 (1st Cir. 2002) ("[U]nexpected developments sometimes may warrant changes in previously announced trial strategies."). " '[A]ssuming counsel does not know at the time of the opening statement that he will not produce the promised evidence, an informed change of strategy in the midst of trial is virtually unchallengeable.' " *In re Pers. Restraint of Benn*, 134 Wn.2d 868, 898, 952 P.2d 116 (1998) (internal quotation marks omitted) (quoting *Turner v. Williams*, 35 F.3d 872, 904 (4th Cir. 1994)). Whether defense counsel acted deficiently in

---

[3] It is unclear from the record how the deputy later verified the car belonged to Gutierrez, but the testimony was provided without objection.

promising specific witnesses is "necessarily fact-based." *United States v. McGill*, 11 F.3d 223, 227 (1st Cir.1993) (" '[N]o particular set of rules can be established to define effective assistance, as hard-and-fast rules would inevitably restrict the independence and latitude counsel must have in making tactical and strategic decisions.' " (alteration in original) (quoting *United States v. Natanel*, 938 F.2d 302, 310 (1st Cir.1991))).

Crusch argues it was unreasonable for defense counsel to call no witnesses in her defense because she had no viable defense for the burglary charge without Messersmith's and Ross' testimony. Crusch cites to *Anderson v. Butler*, 858 F.2d 16 (1st Cir.1988) and *Ouber*, 293 F.3d 19. In *Anderson*, defense counsel promised in opening statement to call two expert witnesses, yet neither specific witness was called. 858 F.2d at 17. In *Ouber*, defense counsel promised testimony from the defendant in opening statement, but the defendant never testified. 293 F.3d at 27. In both cases, the court found defense counsel acted unreasonably given the promise of specific testimony from these witnesses in opening statement. *Anderson*, 858 F.2d at 18; *Ouber*, 293 F.3d at 30.

But here, Crusch cannot show that differences between defense counsel's representations at opening statement and the evidence admitted at trial were not the result of trial strategy. Unlike *Anderson* and *Ouber*, defense counsel never identified specific witnesses in opening statement who would testify that Crusch was given permission. The permission evidence could have been introduced through several different avenues—whether through Messersmith's or Ross' testimony or, perhaps, through the impeachment of Gutierrez.

In fact, Crusch sought this evidence through the cross-examination of Gutierrez. Defense counsel directly asked Gutierrez if she knew Messersmith or Ross, and if she had given

Messersmith permission to housesit. Although Gutierrez denied giving anyone permission, defense counsel still attempted to obtain the testimony. And defense counsel's decision to not call Crusch to elicit this testimony is inherently a strategic choice for many reasons, not least of which are the well-documented perils of waiving one's Fifth Amendment rights. U.S. CONST. amend V.

There could be many strategic reasons defense counsel decided to not call Messersmith and Ross. But to conclude that defense counsel was deficient for failing to do so with mere speculation about counsel's strategic thinking would unduly "restrict the independence and latitude counsel must have in making tactical and strategic decisions." *See McGill*, 11 F.3d at 227.

Given the ever-changing dynamics of trial, defense counsel's lack of success at adducing this testimony at trial is not the same as deficient performance. We reject this claim of ineffective assistance of counsel.

## CONCLUSION

We affirm.

A majority of the panel having determined that this opinion will not be printed in the Washington Appellate Reports, but will be filed for public record in accordance with RCW 2.06.040, it is so ordered.

_____
PRICE. J.

We concur:

_____
GLASGOW, J.

_____
MAXA, J.