**UNITED STATES of America, Appellee,**

v.

**Hussein HAMIE, Defendant, Appellant.**

No. 98–1129.

United States Court of Appeals,
First Circuit.

Heard Nov. 5, 1998.

Jan. 19, 1999.

Lenore Glaser, by Appointment of the Court, for appellant.

John M. Griffin, Assistant United States Attorney, with whom Donald K. Stern, United States Attorney, was on brief for appellee.

Before SELYA, Circuit Judge, COFFIN and CAMPBELL, Senior Circuit Judges.

COFFIN, Senior Circuit Judge.

While investigating his roommate for credit card fraud, law enforcement officers seized evidence implicating appellant Hussein Hamie ("Hamie") in similar criminal activities. Hamie, filing a motion to suppress, claimed that the seizure was unconstitutional. The district court denied the motion, and the government introduced much of the evidence at trial. Hamie was convicted of eleven counts involving credit card fraud, deceptive use of social security numbers and money laundering. On appeal, he renews his claim that the evidence was seized unlawfully and also challenges remarks made during the prosecution's closing argument. We conclude that there was no error either in admitting the evidence seized or in overruling Hamie's objections to the prosecutor's argument, and affirm.

## I.  Background

Federal agents were investigating both Hamie and his roommate, Anthony El Zein ("El Zein"), for purchasing stolen cigarettes, and El Zein individually for his participation in a credit card fraud scheme. During the course of that investigation, Hamie spoke to a cooperating witness not only about trafficking in stolen property such as cigarettes, but also about "boosting" credit cards by sending the card companies checks from accounts backed by insufficient funds. The government arrested both Hamie and El Zein on October 25, 1996. Thereafter, federal agents obtained a search warrant authorizing the search of "the residence of Anthony El Zein" for evidence of credit card fraud.[1]

Upon entering the deserted apartment, one of the agents began to search a bedroom. Although it was not clear whether the room belonged to Hamie or El Zein, the officer discovered credit cards in each of their names on the nightstand. Also present were El Zein's address book and Hamie's student organizer. Underneath the nightstand, the agent found a briefcase with no identifying tags or other information. When the briefcase was partially opened, he found a silver box inside. The box was inscribed with the insignia of American Express, one of the credit card companies with which El Zein had an account.

The silver box, in turn, contained a Massachusetts state identification card and two

---

1.  The warrant was for El Zein alone because at the time the agents believed they lacked probable cause to search Hamie's property for proof of credit card fraud. When the warrant was issued, the evidence involving El Zein consisted of both financial documents and testimony of the cooperating witness, whereas the evidence on Hamie was just the conversation with the witness.

California driver's licenses in the names of Hussein M. Sleiman and Abbas M. Sleiman, but with Hamie's picture on them.[2] The agent noticed that Hamie's clothing, his haircut, and the background were precisely the same in the identification photos. The officer also found multiple credit cards in those other names, as well as an index card listing the corresponding social security numbers. The agent then examined the rest of the briefcase's contents, which consisted of credit card applications, courtesy checks, credit reports, and correspondence relating to Hussein Sleiman, Abbas Sleiman, and Hamie.

At this point, the agent believed the bedroom to be Hamie's, but continued to search both because he believed the evidence found in the silver box to be sufficient to constitute probable cause, and because he thought the room might contain other evidence relating to El Zein. During the rest of the search of the bedroom, the officer seized a number of other pieces of evidence with the names Hussein Sleiman, Abbas Sleiman, and Hamie on them, as well as items which turned out to be irrelevant, including, *inter alia,* a muffin recipe, jeans recently purchased with a credit card, and personal photographs and negatives.

Based on the new evidence, the government filed a superseding indictment charging Hamie with credit card fraud, deceptive use of social security numbers and money laundering. Prior to trial, Hamie moved to suppress all the evidence seized in the apartment search, but, after a two-day hearing, the court denied the motion. During the trial, Hamie claimed that he lacked the intent to defraud. In its closing argument, the government stated that there was "absolutely no reason to have false licenses like this, unless you intend to defraud." After defense counsel countered in closing argument that the government had not submitted any evidence that the licenses were actually ever used, the government argued in rebuttal that the licenses provided Hamie with identification necessary to obtain cash advances. Claiming that these comments were imper-

missible because they related to facts not in evidence, Hamie objected to both, but the court overruled his objections.

## II. *Analysis*

### A. *Search and Seizure*

The Fourth Amendment protects individuals "against unreasonable searches and seizures," and requires that search warrants "particularly describ[e] the place to be searched, and the persons or things to be seized." U.S. Const. amend. IV. In general, if the scope of a search exceeds that permitted by the terms of a valid warrant, the subsequent seizure is unconstitutional. *See Horton v. California,* 496 U.S. 128, 140, 110 S.Ct. 2301, 110 L.Ed.2d 112 (1990). In certain limited circumstances, however, the "plain view" doctrine permits law enforcement agents to seize evidence in plain view during a lawful search even though the items seized are not included within the warrant's scope. *See Coolidge v. New Hampshire,* 403 U.S. 443, 465, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971); *United States v. Caggiano,* 899 F.2d 99, 103 (1st Cir.1990).

In order that it remain an exception rather than the rule, the Supreme Court has established a two-part test for the plain view doctrine. First, "an essential predicate to [the seizure of evidence not within a warrant's purview is] that the officer did not violate the Fourth Amendment in arriving at the place from which the evidence could be plainly viewed." *Horton,* 496 U.S. at 136, 110 S.Ct. 2301. Second, the doctrine requires that the evidence's incriminating character be "immediately apparent" to the officer. *Id.* The district court's ultimate conclusion that both elements had been satisfied is reviewed *de novo.* *See United States v. Pervaz,* 118 F.3d 1, 2 (1st Cir.1997).

We agree that both requirements are easily met on the facts of this case. Indeed, there is no dispute concerning the first requirement. The government had a valid warrant to search the premises. When the agents began searching the bedroom, they

---

**2.** The agent knew what Hamie looked like from observing him during surveillance and from meeting Hamie at the time of his arrest.

were not sure whom it belonged to; both Hamie's and El Zein's personal effects were on the nightstand. The officers were entitled to open the briefcase under that table to search for El Zein's documents. *See United States v. Giannetta,* 909 F.2d 571, 577 (1st Cir.1990) ("Courts have regularly held in searches for papers, the police may look through ... briefcases ... and similar items and briefly peruse their contents to determine whether they are among the documentary items to be seized."). Similarly, they were justified in opening the silver box found inside, especially because it was inscribed with the insignia of one of the credit card companies with which El Zein had an account. *See United States v. Gray,* 814 F.2d 49, 51 (1st Cir.1987) ("[A]ny container situated within a residential premises which are the subject of a validly-issued warrant may be searched if it is reasonable to believe that the container could conceal items of the kind portrayed in the warrant."). Thus, the agents were lawfully present and authorized to open the briefcase and box to examine their contents.

■ The second element also poses no problem. The incriminatory nature of the evidence in the silver box was immediately apparent to the agent. The term "immediately apparent" has been defined as sufficient to constitute probable cause to believe it is evidence of criminal activity. *See Giannetta,* 909 F.2d at 578. This standard requires "[t]here must be enough facts for a reasonable person to believe that the items in plain view may be contraband or evidence of a crime. A practical, nontechnical probability that incriminating evidence is involved is all that is required." *Id.* at 579 (internal quotations and citations omitted).

From the conversation with the cooperating witness, the officers had information that Hamie was either aware of or involved in the credit card fraud scheme. When the agent opened the silver box, he found licenses with Hamie's picture on them, but in two other names. The fact that the background, Hamie's clothing and his haircut were the same in both identification photos increased the agent's suspicions. In addition, he discovered a number of credit cards in those other names and the index card with the corresponding social security numbers. A reasonable person certainly would have believed that these items provided Hamie with false identities and hence may have been evidence of credit card fraud. The agent need not be convinced beyond a reasonable doubt, but merely have probable cause to believe that the evidence was incriminatory. *See id.* at 578–79. We have no doubt that such a standard has been satisfied here.

Once the agent came across the false licenses and credit cards, the incriminatory nature of any other items in those names became immediately apparent to the agent. When the agent found the other courtesy checks, credit card applications, and credit card documents, he reasonably and accurately believed that he had probable cause to seize them, and his decision to do so fell well within constitutional bounds. *See id.* at 577 (agent searching for evidence of insurance and credit card fraud was justified in also looking for evidence of bank fraud, once he found obvious evidence of that crime).

As the Supreme Court has stated, "[a]n example of the applicability of the 'plain view' doctrine is the situation in which the police have a warrant to search a given area for specified objects, and in the course of the search come across some other article of incriminating character." *Coolidge,* 403 U.S. at 465–66, 91 S.Ct. 2022. That scenario is precisely what occurred here. The district court properly found that the licenses, credit cards and other credit documents came within the plain view exception.

■ Hamie attempts to overcome this conclusion by claiming that the officers were engaged in a fishing expedition or "general search," pointing to items seized that clearly had no connection with the criminal charges, such as the muffin recipe and family photos. He argues that the penalty for such a broad search is suppression of all items seized. Although courts have periodically applied the extraordinary and drastic remedy of suppressing all evidence seized, this has occurred only in extreme situations, such as when the lawful basis of a warrant was a pretext for the otherwise unlawful aspects of a search or when the officers flagrantly dis-

regarded the terms of the warrant. *See United States v. Foster*, 100 F.3d 846 (10th Cir.1996); *United States v. Young*, 877 F.2d 1099, 1105 (1st Cir.1989); *United States v. Rettig*, 589 F.2d 418, 423 (9th Cir.1978). That was not the case here. To a large degree, the evidence seized fell within the limits of the warrant or the plain view exception. While officers did seize some items clearly unrelated to the subject of the warrant, the search was neither a pretext for an attempt to find those items, nor did the officers flagrantly disregard the terms of the warrant by seizing a few items beyond its scope. The irrelevant evidence was a very small tail on a very large dog.

▉ In general, the improper seizure of "many items outside [a] warrant's scope … does not alone render the whole search invalid and require suppression and return of all documents seized." *Young*, 877 F.2d at 1105. Instead, the normal remedy is to suppress the use of any items improperly taken. *See, e.g., Waller v. Georgia*, 467 U.S. 39, 44 n. 3, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984); *United States v. Abrams*, 615 F.2d 541, 550 (1st Cir.1980) (Campbell, J., concurring) ("It is clear that overzealous execution [of a search warrant] requires suppression only of any materials seized outside of the warrant's authority (and the fruits of any such improperly seized material)."). To the degree that the unauthorized items were improperly seized, there was no need to suppress them because the government never sought to introduce them at Hamie's trial.

## B. *Closing Arguments*

▉ Hamie's second challenge to his conviction concerns two statements made by the prosecutor, one in closing argument and one during rebuttal argument. In the first, the prosecutor argued that there was no reason for Hamie to have the false licenses unless he intended to defraud someone. After Hamie asserted that there was no evidence that the licenses were, in fact, used to defraud, the prosecutor argued that Hamie would be required to present identification to obtain cash advances, which the evidence shows he did on a number of occasions. Hamie claims

that both comments refer to facts not in evidence.

▉ It is well settled that in its closing argument the prosecution may not rely on knowledge or evidence unavailable to the jury. *United States v. Smith*, 982 F.2d 681, 683 (1st Cir.1993). On the other hand, the prosecutor may attempt to persuade the jury to draw inferences from the evidence. *United States v. Moreno*, 947 F.2d 7, 8 (1st Cir. 1991). This is a narrow path to tread, with some comments being impermissible because they rely on too big an inferential leap, *see, e.g., United States v. Artus*, 591 F.2d 526, 528 (9th Cir.1979) (prosecution improperly discussed the authority of Director of Federal Bureau of Prisons in closing argument even though the details of his powers had not been placed in evidence), and others being within permissible limits, *see, e.g., Moreno*, 947 F.2d at 8 (prosecutors permissibly asked jury to assess the reasonableness of the defendant's contention that she was unaware of boyfriend's drug distribution activities). While prosecutors should be wary of crossing that boundary, we have no trouble identifying the challenged statements as reasonable inferences in this particular case.

▉ We have said in a variety of different ways that the prosecution may "call[ ] on the jury to employ its 'collective common sense' in evaluating the evidence and to draw reasonable inferences therefrom." *United States v. Abreu*, 952 F.2d 1458, 1471 (1st Cir.1992) (internal quotation omitted). "[I]n … choosing from among competing inferences, jurors are entitled to take full advantage of their collective experience and common sense." *United States v. O'Brien*, 14 F.3d 703, 708 (1st Cir.1994). *See also United States v. Ortiz*, 966 F.2d 707, 712 (1st Cir. 1992) (When they become members of a jury, individuals should neither "divorce themselves from their common sense nor [ ] abandon the dictates of mature experience.").

There is no doubt that the prosecutor's first comment merely asked the individuals to draw an inference from their life experiences. The prosecutor argued that the false licenses were evidence of fraud because there was no other reason for Hamie to possess them. If *the jury's common sense*

and experience led it to conclude that Hamie had other grounds for possessing the false licenses, the jury could have rejected the prosecution's argument and could have drawn a reasonable inference in Hamie's favor. Moreover, in his closing argument defense counsel could have suggested alternative legal reasons for possessing false licenses. The fact that the jury drew an inference unfavorable to Hamie does not make the prosecutor's comment impermissible.

The reference to Hamie's need for identification gives us slightly more pause, but we are firmly convinced that the argument was permissible. The government claimed that the false licenses were evidence of the credit card fraud scheme because Hamie would need to present such identification to get a cash advance, which he did several times. The prosecution's comment hearkened back to evidence that Hamie offered to teach the cooperating witness how to obtain cash advances from banks based on the fraudulent credit cards. In making this argument, the prosecution again asked the jury to draw on their collective life wisdom and practice. It is commonplace for a bank employee to request identification prior to executing a financial transaction, a policy with which jurors would have extensive experience. Indeed, we would be surprised if a bank were to provide a customer with sums of cash based merely on the presentation of a credit card and no identification linking that particular individual to the card. While the jury had no actual evidence that Hamie would be asked for identification before a bank could process a cash advance, the prosecution's comment was an allowable inference relying on the jury's experience. *See Ortiz*, 966 F.2d at 712. Although it might have been preferable for the prosecution to have introduced evidence to that effect, the argument was permissible.

Neither ground for appeal is meritorious, and the conviction is therefore affirmed.

*Affirmed.*