**UNITED STATES of America, Plaintiff**

**v.**

**Kristen GILBERT, Defendant**

**No. 98–30044–MAP.**

United States District Court,
D. Massachusetts.

April 25, 2000.

William M. Welch, II, U.S. Attorney's Office, Springfield, MA, for U.S.

David P. Hoose, Katz, Sasson & Hoose, Springfield, MA, Harry L. Miles, Green, Miles, Lipton, White & Fitz–Gibbon, Northampton, MA, for Kristen Gilbert.

*MEMORANDUM AND ORDER RE-GARDING DEFENDANT'S MO-TIONS TO SUPPRESS EVIDENCE SEIZED FROM 182 NORTHAMP-TON STREET, APARTMENT D, EASTHAMPTON, MA ON JULY 23, 1996 AND OCTOBER 1, 1996*

(Docket Nos. 177 & 179)

PONSOR, District Judge.

## I. *INTRODUCTION*

Before the court are defendant Kristen Gilbert's motions to suppress evidence seized on July 23, 1996 and October 1, 1996 from her residence at 182 Northampton Street, Apartment D, Easthampton, Massachusetts. For the reasons stated below, the defendant's motions will be denied.

## II. *BACKGROUND*

In June, 1996, a federal grand jury initiated an investigation into the high incidence of deaths and emergency situations (or "codes") during the evening shift on Ward C/Intensive Care Unit ("ICU") of the Northampton Veterans Affairs Medical Center in Leeds, Massachusetts ("VAMC"). Kristen Gilbert, a registered nurse who worked the evening shift on Ward C, was the subject of the grand jury investigation.

On July 23, 1996, the government applied for and this court issued a search warrant for Gilbert's residence at 182 Northampton Street, Apartment D, Easthampton, Massachusetts. The application included an affidavit by Special Agent Steven Plante, an eight-year veteran of the Department of Veteran Affairs ("DVA"), Office of Inspector General.[1] It included,

---

1. Steven Plante is empowered to investigate and make arrests for federal crimes related to DVA employees and DVA property. Prior to

*inter alia,* the following facts to support a finding of probable cause that Gilbert had committed federal crimes—theft of government property and assault and battery—and that evidence of her criminal activity would be found at her residence.

First, Plante described an investigation into an increase in codes and deaths of patients on Ward C/ICU at the VAMC between the fall of 1995 and February 1996. *See* Government's Consolidated Response, Docket No. 205, Exhibit A, Plante Affidavit ¶¶ 7–33. In particular, he reported that three registered nurses who worked the evening shift on Ward C with defendant Gilbert became concerned over the increased deaths and reported this concern to their supervisor. The nurses noticed that the codes and deaths occurred more frequently when Gilbert worked her evening shift on Ward C. *See id.* at ¶¶ 11, 12, 22. Second, Plante described a statistical analysis of the deaths that occurred on Ward C between January 1, 1995 and February 19, 1996, and its conclusion that Gilbert was present or on duty for 37 of them during that time and that the likelihood that this was a coincidence was less than one tenth of one percent. *See id.* at ¶ 18.

Next Plante described the circumstances surrounding the emergencies of the alleged victims. Gilbert was on duty and cared for each of them. In each case, a patient who otherwise did not enter Ward C/ICU with cardiac trouble would experience dangerously accelerated heart rates allegedly associated with the administration of cardiac medication such as epinephrine, which if used in excess, could cause the heart to become unstable. *See id.* at ¶¶ 34–44. Plante reported that other nurses began to suspect that Gilbert was inducing these accelerated heart rates by injecting epinephrine, because in one instance a nurse identified used epinephrine ampules in a disposal box in the ICU after the patient was stabilized, and in another instance epinephrine was missing shortly after a patient coded. *See id.* at ¶¶ 38–42. Moreover, an analysis of epinephrine disbursement concluded that, of the 125 ampules dispensed during the relevant time frame, the hospital could only account for seventy-five ampules. *See id.* at ¶ 52.

Finally, Plante described an eye-witness account by a co-worker regarding theft of cardiac medications. *See id.* at ¶ 54. The nurse reported to Plante that she observed the medication sticking out of Gilbert's personal jacket that was hanging in the nurses' locker room. *See id.* Moreover, another witness observed that Gilbert had a bee sting kit at her apartment that contained epinephrine, and had seen the kit in her apartment on two or three occasions since December, 1995. *See id.* at ¶ 55.

The July 23, 1996 warrant authorized the seizure of various items listed in "Attachment A—Property to be Seized." These items included the following.

1. Medical or nursing textbooks, journals, manuals, articles, or notes of any kind relating to acute care, emergency treatment, cardiac illnesses, and medications related to cardiac illnesses or symptoms;

2. Any and all personal records of patient care, including, but not limited to, diaries, notes and other documents, limited to those patients who have "coded" and/or died;

3. Any and all cardiac medications, including but not limited to epinephrine;

4. Any and all devices or systems capable of administering cardiac medications into an individual, including, but not limited to syringes, needles, Heparin Locks, saline solution, and saline bottles;

5. Any and all evidence relating to the DVA investigation of the codes and/or deaths on Ward C/ICU, including but not limited to, notes, diaries, e-mails,

his eight years at the DVA, he spent four years as a special agent for the Department of Agriculture, Office of Inspector General. *See*

Government's Consolidated Response, Docket No. 205, Exhibit A, Plante Affidavit ¶ 1.

and computer records stored in floppy disc, hard disc, and/or hard-drive form.

Government's Consolidated Response, Docket 205, Exhibit A, Attachment A. The warrant was executed on the same day and the police seized a computer, computer disks, personal documents relating to nursing, and books relating to the practice of medicine. *See* Government's Consolidated Response, Docket 205 at 5.

On October 1, 1996, the government applied for and this court issued a second warrant on Gilbert's residence. This time Gilbert was the target of an investigation regarding the making of a bomb threat to the VAMC. In the government's application for the October 1, 1996 search, its attached list of property to be seized included the following items.

1. Any and all devices capable of recording one's voice or altering one's voice;

2. Any and all invoices or charge slips showing the purchase of any such voice recorders or changers;

3. Any and all notes or scripted messages consistent with the messages left at the VA;

4. Any and all recordings for purposes of practice and rehearsal;

5. Any and all packaging materials, boxes, containers, or shopping bags consistent with voice recording devices;

6. Any rolls of change for making pay telephone calls;

7. Any and all VA telephone directories or telephone directories bearing the security desk line.

Government's Consolidated Opposition, Docket No. 205, Exhibit B, Attachment A. The warrant was executed on the same day, and the police seized various papers from Gilbert's trash and pocketbook, receipts from her car, newspapers, a Talkboy recorder and instructions, notebooks, VCR tapes, and letters. *See id.*

On May 13, 1998, a federal grand jury returned a fifteen-count indictment against Gilbert. Counts One through Thirteen charge defendant with four counts of first degree murder, four counts of attempted murder, and six counts of assault with intent to commit murder. Count Fourteen charges Gilbert with retaliating against a witness, and Count Fifteen charges her with obstruction of justice by making a bomb threat. Defendant anticipates that items seized in the above described search warrants will be used at her trial of this indictment and now moves this court to suppress all the evidence seized and any fruits thereof.

## III. *DISCUSSION*

Gilbert attacks the validity of both the July 23, 1996 and October 1, 1996 search warrants. Regarding the July 23rd search, she argues (1) that it lacked sufficient facts to support the conclusion that there was probable cause that evidence of the alleged crime would be found at her residence; (2) that some of the objects seized had no nexus to criminal behavior pursuant to Rule 41(b) of the Federal Rules of Criminal Procedure; (3) that the warrant lacked sufficient particularity; and finally (4) that the seizing officers went beyond the warrant's scope by seizing items not specifically mentioned in the application. Regarding the October 1st search, she contends only that the seizures went beyond the warrant's scope. Regarding both warrants she requests an evidentiary hearing. The following will discuss the attacks on each warrant in turn, and then discuss the question of whether an evidentiary hearing is justified for either motion.

### A. *July 23, 1996 Search Warrant*

#### 1. *Probable Cause*

Gilbert attacks the validity of the July 23rd warrant by arguing that it lacked sufficient facts to support a finding of probable cause. In support of her claim, she argues that in one section of the affidavit—where Special Agent Plante justifies seizing documentary medical information such as textbooks, notes, and the

like—Plante indicated that the material will "possibly" be found in the defendant's home based on what he was told a typical nurse would possibly keep among her personal belongings. According to Gilbert, the fact that a nurse would "possibly" keep medical information among her personal belongings "by definition does not constitute probable cause." Defendant's Memorandum in Support, Docket No. 178 at 2.

■ The First Circuit Court of Appeals has held that a warrant application "must demonstrate probable cause to believe that (1) a crime has been committed ... and (2) enumerated evidence of the offense will be found at the place to be searched." *United States v. Feliz*, 182 F.3d 82, 86 (1st Cir.1999).[2] With regard to the second element, the Supreme Court has held that the task of the magistrate judge in determining whether probable cause exists is "to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him ... there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). In other words, the facts presented to the magistrate judge need only "warrant a [person] of reasonable caution" to believe that evidence of a crime will be found at the place to be searched, and that this probable cause standard "does not demand showing that such a belief be correct or more likely true than false." *Texas v. Brown*, 460 U.S. 730, 742, 103 S.Ct. 1535, 75 L.Ed.2d 502 (1983) (plurality opinion). *See also, Feliz*, 182 F.3d at 86.

■ Defendant's claim that no probable cause existed to believe that evidence of the alleged crimes would be found at her residence is unpersuasive. Although there are some events that are possible but not probable, winning the lottery for example, saying that an event is "possible" does not necessarily exclude it from being "proba-ble," depending on the context. Even more importantly, as a matter of law, a court must examine "all the circumstances set forth in the affidavit" not just one isolated phrase. *See Gates*, 462 U.S. at 238, 103 S.Ct. 2317. The following excerpt from Special Agent Plante's affidavit provides the context in which the phrase was used.

> The Chief of Nursing Services at the VA [Veterans Administration] advised me that a professionally trained nurse would possibly keep at home certificates of education, nursing school books, performance evaluations, hospital or in-service memoranda, including training memoranda, and policy and procedural manuals. Additionally, the Chief of Nursing Services believed that while in nursing school, students are taught to keep a journal or diary of those patient cases where certain significant medical problems may arise....
>
> Nurse B advised me that a nurse would possibly keep ... nursing textbooks, performance evaluations, and reports of contact. The VA requires nurses to complete a report of contact when a VA patient complains about treatment received from a nurse.

Government's Consolidated Response, Docket No. 205, Exhibit A, Plante Affidavit at ¶¶ 61, 62. Plante goes on to explain how these types of documents would describe how cardiac medications are delivered and their effect on the human body; moreover, the affiant explains how these documents may be probative of Gilbert's knowledge of particular patients. *Id.* at ¶ 63. From this context, a neutral judicial officer might easily conclude that there was a fair probability that at least some of the described medical information of the alleged crime would be found at Gilbert's residence.

---

2. Defendant Gilbert does not quarrel with the government's contention that there was probable cause to believe that she committed theft of government property and assault and bat-tery on patients at VAMC, so the probable cause analysis will focus on whether evidence of the alleged crimes would be found at her residence.

### 2. *Fed.R.Crim.P. 41(b)*

■ Gilbert also objects to the search warrant on the ground that it violated Rule 41(b) of the Federal Rules of Criminal Procedure. Rule 41(b) limits the types of things that may be seized during the search. It states in pertinent part:

> A warrant may be issued under this rule to search for and seize any (1) property that constitutes evidence of the commission of a criminal offense; or (2) contraband, the fruits of crime, or things otherwise criminally possessed; or (3) property designed or intended for use or which is or has been used as the means of committing a criminal offense.

FED.R.CRIM.P. 41(b). Gilbert maintains that "many of the items at which the search warrant is directed fail to meet any of the criteria set forth in Rule 41(b)." Defendant's Memorandum in Support, Docket No. 178 at 3. As an example, she points to the medical and nursing textbooks and other literature relating to acute care, emergency treatment and cardiac illness. Specifically, she argues, citing *Warden v. Hayden*, 387 U.S. 294, 307, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), that these items have no legitimate nexus to any criminal activity, which is a prerequisite for seizing them under this rule.

The Supreme Court in *Hayden* did hold that a nexus must exist between the items permitted to be seized and the criminal behavior alleged. *Id.* at 307, 87 S.Ct. 1642.[3] The Court noted that the finding of a nexus regarding the fruits or instrumentalities of the crime—Rule 41(b)(2)—is automatic. However, regarding items constituting "mere evidence"—Rule 41(b)(1)—the Court held that the "nexus" is satisfied if there is "probable cause to believe that the evidence sought will aid in the particular apprehension or conviction." *Id. Cf. United States v. Sheehan*, 583 F.2d 30, 32 (1st Cir.1978) (probable cause to secure names and phone numbers on scrap of paper taken from suspected bank robber's wallet because the evidence sought would aid in a particular apprehension or conviction).

Here, Special Agent Plante's affidavit supports a finding of probable cause that the evidence sought would aid in conviction. His warrant sets forth in detail the ongoing investigation into suspicious deaths and codes at the VAMC, and the *modus operandi* of the supposed perpetrator. Gilbert was a target of that investigation given the interviews of other nurses and the statistical analysis. Moreover, the affidavit included information from an eyewitness that Gilbert stole medication from the hospital. The textbooks, articles, and other educational materials relating to acute care, emergency care, cardiac care and medications about cardiac care are the types of evidence that would aid in a conviction since they are probative of her knowledge. Thus, they constitute evidence of committing a criminal offense pursuant to Rule 41(b)(1). The other documentary materials sought—the personal records of patient care—would likewise aid in a conviction and so constitute evidence pursuant to Rule 41(b)(1). Finally, the seizure of other items sought—cardiac medications and devices for their delivery—did not violate Rule 41(b) because these items constitute property that might have been used to commit the crime pursuant to Rule 41(b)(3). Contrary to Gilbert's contentions, then, the search warrant did meet Rule 41(b) criteria.

### 3. *Particularity*

■ Gilbert next attacks the warrant on the basis that two paragraphs describing material to be seized lack sufficient partic-

---

**3.** The Advisory Committee Notes to the 1972 amendment to Rule 41(b) state that subdivision (b) was changed to include "mere evidence" as permitted items to be seized "to take account of ... *Warden v. Hayden*, 387 U.S. 294, 87 S.Ct. 1642, 18 L.Ed.2d 782 (1967), and recent Congressional action (18 U.S.C. § 3103a) which authorizes the issuance of a search warrant to search for items of solely evidentiary value." FED.R.CRIM.P. 41(b), Advisory Committee Note, 1974 Amendment. *See also* 3 WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 664 at 608 n. 17 (1982).

ularity. As such, she argues, the warrant violates the Fourth Amendment and Rule 41(c)(1) of the Federal Rules of Criminal Procedure.[4]

Specifically, she challenges paragraphs one and five of "Attachment A—Property to be Seized," which describe the documentary medical information relating to emergency care and cardiac illness, and the documentary evidence relating to the DVA investigation, respectively. She maintains that because these paragraphs contain written documents and other printed materials, any warrant seeking such items must comply with the heightened standard found in *Stanford v. Texas*, 379 U.S. 476, 485–86, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965), which requires law enforcement officials to describe materials presumptively protected by the First Amendment with "scrupulous exactitude." Defendant's Memorandum in Support, Docket No. 178 at 3.

According to Gilbert, paragraphs one and five "clearly do not meet the constitutional standard for particularity" because the written materials described in paragraph one include items "that would be legitimately possessed by virtually any health care professional." *Id.* Thus, the description "provides no basis upon which an executing agent could discern whether any of the documents listed are innocently possessed or [evidence] connected with the crime under investigation." *Id.*

Gilbert's lack of particularity challenge is mistaken for two reasons. First, paragraphs one and five are not written in a way that improperly bestows unfettered discretion upon the seizing agents. *See United States v. Fuccillo*, 808 F.2d 173, 175 (1st Cir.1987). The Fourth Amendment provides that "no warrants shall issue, but upon probable cause, supported by oath or affirmation, and *particularly describing* the place to be searched and the persons or *things to be seized.*" (em-

phasis added). U.S. Const. amend. IV. The purpose of the particularity requirement is to eliminate "general, exploratory rummaging in a person's belongings." *Coolidge v. New Hampshire*, 403 U.S. 443, 467, 91 S.Ct. 2022, 29 L.Ed.2d 564 (1971). Moreover, as to the property to be seized, "nothing is [to be] left to the discretion of the officer executing the warrant." *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965) (citation omitted).

Neither paragraph leaves the seizing agent with unfettered discretion. For example, paragraph one is limited to documentary medical information specifically related to acute care, emergency treatment, cardiac illness, and medications related to cardiac illness. In addition, paragraph five is specifically limited to written materials related to the Department of Veterans Affairs' investigation of the codes and/or deaths on Ward C/ICU.

This identifying language is sufficient to give the seizing agents appropriate guidance. In *United States v. Fuccillo*, 808 F.2d 173, 176 (1st Cir.1987), for example, the court found a search warrant invalid for lack of particularity where it merely described the items to be seized as "cartons of women's clothing" instead of describing them as "cartons of women's clothing *from Causal Corner stores*" or "cartons *from Women's Specialty Retailing.*" *Id.* (emphasis added). Without the additional description, the court noted, the executing agents "had no 'physical criteria or detailed description in the warrant to enable them to determine what they might lawfully seize.'" *Id.* at 177 (citation omitted).

In this case, warrant language permitting seizure only of a specific type of medical information, *i.e.*, emergency care and cardiac care, and other well-defined written material was sufficient to insure that

---

**4.** Rule 41(c)(1) provides in relevant part that "[i]f the federal magistrate judge ... is satisfied that the grounds for the application exist or that there is probable cause to believe that

they exist, that magistrate judge ... shall issue a warrant *identifying the property* or person to be seized .... Fed.R.Crim.P. 41(c)(1)" (emphasis added).

the seizing agents could distinguish these documents from unrelated written material. In other words, the warrant's strictures were sufficient to prevent a general rummaging through defendant's books and other documents. To demand, as Gilbert apparently does, that the seizing agents be required to distinguish between cardiac literature she innocently possessed from cardiac literature which evidenced criminal activity would make any search impossible.

The second reason Gilbert's argument that the warrant lacked particularity is mistaken derives from her misuse of the heightened standard of particularity found in *Stanford v. Texas*, 379 U.S. 476, 485, 85 S.Ct. 506, 13 L.Ed.2d 431 (1965). That standard is inapplicable in this case.

In *Stanford*, the Supreme Court held that when the materials sought to be seized are presumptively protected by the First Amendment, the requirements of the Fourth Amendment must be applied with "scrupulous exactitude." *Stanford v. Texas*, 379 U.S. at 485, 85 S.Ct. 506. This case involved a warrant issued on the basis of a Texas statute, which, among other things, outlawed the Communist Party. *Id.* at 477, 85 S.Ct. 506. The warrant authorized the search of a private home for all books, records, and other materials relating to the Communist Party, obviously providing the executing officers no guidance on how to separate out unprotected from protected publications. *See also Marcus v. Search Warrant*, 367 U.S. 717, 732, 81 S.Ct. 1708, 6 L.Ed.2d 1127 (1961) (striking down a search warrant authorizing seizure of "obscene materials" because it was impossible to execute warrant "with any realistic expectation that the obscene might be accurately separated from the constitutionally protected").

*Stanford* stated that the "scrupulous exactitude" standard applied when the things to be seized are "books, and the *basis* for their seizure *is the ideas* which they contain." *Stanford*, 379 U.S. at 485, 85 S.Ct. 506 (emphasis added). *See also Zurcher v. Stanford Daily*, 436 U.S. 547, 564 (1978). Here, however, the search warrant does not implicate Gilbert's First Amendment interests because the subject of the criminal investigation concerned non-expressive conduct—stealing and assault and battery—and the materials were not targeted because of the ideas expressed. The search was simply aimed at uncovering data useful in committing the charged crimes. The goal of the inquiry was to confirm that she had the requisite technical knowledge to commit the assault and battery. The *Sanford* standard was inapplicable in this case.

#### 4. *Scope of the Search Warrant*

■ Finally, Gilbert attacks the validity of the July 23, 1996 warrant on the ground that it went "well-beyond" its scope. She contends that this violation is so egregious as to constitute a "general search" and as such "it is appropriate to suppress all items seized under the warrant." Defendant's Memorandum in Support, Docket No. 178 at 4.

This contention is without merit. When the items authorized to be seized are compared with those actually seized, little, if any, unrelated material appears to have been taken, and certainly nothing so egregious as to invalidate the entire search. *See United States v. Hamie*, 165 F.3d 80, 84 (1st Cir.1999) (noting that in general, "the improper seizure of 'many items outside [a] warrant's scope ... does not alone render the whole search invalid and require suppression and return of all documents seized.' ") (citation omitted).

The July 23, 1996 warrant authorized the seizure of medical documentary materials specific to cardiac and emergency care, of personal records of patients, of cardiac medications, of devices for their administration, and of evidence relating to the investigations. During the execution of the warrant, the bulk of the material seized included a computer, computer disks, various personal documents relating to nursing, and eight books related to the practice of medicine. This material clearly falls within the scope of the warrant.

Gilbert contends that there were a number of items seized that fall outside the scope, such as folders containing school and work-related materials, and email messages. However, this material falls easily within the scope of the warrant, because the warrant authorized seizing medical literature and evidence of the investigation, which might be found in school and work-related folders and/or email messages.

The government has conceded that there were a small number of items seized outside the warrant's scope such as a newspaper article, a raffle ticket, graduation photos, a calendar, and a recipe. But the government has acknowledged that it will not introduce into evidence these and other items that fall outside the warrant's scope. The bulk of the items seized were clearly within the warrant's scope, and the small number of items that were outside the scope do not, contrary to defendant's contentions, justify invalidating the entire search. *See Hamie,* 165 F.3d at 84.

In summary, the defendant's attacks on the July 23, 1996 warrant are unavailing. The court will now turn to the warrant supporting the October 1, 1996 search.

### B. *October 1, 1996 Search Warrant*

■ As noted above, Gilbert challenges the October 1, 1996 search warrant only on the basis of its scope, contending that "the search amounted to nothing less than a general search" so that "it is appropriate to suppress all items seized." Defendant's Memorandum in Support, Docket No. 180 at 2.

The October 1, 1996 search warrant authorized the seizure of evidence related to the alleged crime of making a bomb threat to the VAMC. As noted above, it authorized the seizure of voice recording or altering devices, purchase receipts, notes or scripted messages, practice recordings, and VA telephone directories. During the search, the officers seized a relatively small amount of material, nine items all told. These items included a Talkboy recorder, papers, notebooks, receipts and letters—all clearly within the scope of the warrant.

Gilbert argues that some of items seized such as a booklet entitled "Friends," directions written on stationery and copies of local newspapers fall outside the warrant's scope. Although some of these and other items are more at the periphery, they do not undermine the validity of the warrant.

In conclusion, the defendant's attack on the October 1, 1996 search warrant is unavailing. The motion to suppress the evidence seized will therefore be denied.

### C. *Request For Evidentiary Hearing*

With respect to both search warrants, Gilbert requests an evidentiary hearing "on the motivations and actions of the executing agents." Defendant's Supplemental Affidavit, Docket No. 233 at 7. Defendant contends that the "warrants were issued as a ruse to conduct a general search of her possessions for any evidence linking her to the wrongdoing at the VAMC." *Id.*

■ "Evidentiary hearings on motions are the exception, not the rule." *United States v. McGill,* 11 F.3d 223, 225 (1st Cir.1993). "Even in the criminal context," the First Circuit has stated "a defendant is not entitled as a matter of right to an evidentiary hearing on a pretrial or post-trial motion." *Id.* (citations omitted). In fact, in "most situations, motions can be 'heard' effectively on the papers." *Id.* In "borderline cases," however, the First Circuit has stated the following test for granting an evidentiary hearing in a criminal case: "did the defendant make a sufficient threshold showing that material facts were in doubt or in dispute?" *Id.* (citation omitted). To make this showing, "defendant must allege facts 'sufficiently definite, specific, detailed, and nonconjectural, to enable the court to conclude that a substantial claim is presented.'" *United States v. Lewis,* 40 F.3d 1325, 1332 (1st Cir.1994) (citation omitted).

**172**

The defendant has failed to make this preliminary showing. The only facts that are in dispute, according to defendant, are the motivations and actions of the seizing agents, *i.e.*, whether the search was a ruse.

■ Defendant, however, has presented no specific facts to support a threshold showing that a ruse existed. The court has already rejected her "beyond the scope" allegations, finding that any unauthorized seizures were not significant enough to impact the validity of the searches. Indeed the volume of probative evidence seized under the clear authorization of the warrant rebuts any inference of a ruse. Without more, defendant's allegations of a ruse are speculative and conclusory, and do not provide a basis for an evidentiary hearing. *See United States v. Panitz*, 907 F.2d 1267, 1274 (1st Cir.1990) (holding that a "district court is not obliged to schedule an evidentiary hearing on the basis of conclusory allegations, vague insinuations, unsupportable inferences, rank speculation, opprobrious epithets, or any combination of the foregoing"). Therefore, the court will deny the defendant's request for an evidentiary hearing with regard to both motions to suppress.

## IV. *CONCLUSION*

For the foregoing reasons, defendant's motions to suppress and for an evidentiary hearing (Docket Nos. 177 and 179) are DENIED.

It is So Ordered.